**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ERIC STEVEN ELLIS,

    Petitioner,

vs.                                   Case No.:    3:15-cv-1078-J-34JBT
                                                                          3:10-cr-276-J-34JBT

UNITED STATES OF AMERICA,

    Respondent.
_____/

**ORDER**

    This case is before the Court on Petitioner Eric Steven Ellis's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, Motion to Vacate) and Memorandum of Law and Brief in Support of § 2255 Motion (Civ. Doc. 2, Memorandum).[1] Ellis raises a single claim, specifically, that trial counsel failed to communicate a plea agreement. The United States has responded to the Motion to Vacate (Civ. Doc. 12, Response), and Ellis has replied (Civ. Doc. 16, Reply). The case is ripe for a decision.

    Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255

---

[1]     Citations to the record in the underlying criminal case, United States vs. Eric Steven Ellis, Case No. 3:10-cr-276-J-34JBT, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, Case No. 3:15-cv-1078-J-34JBT, will be denoted as "Civ. Doc. __."

[2]     Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

1

motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Ellis's Motion to Vacate is due to be denied.

## I.    Background

The facts of the underlying crime are thoroughly recounted in United States v. Godwin, 765 F.3d 1306, 1310-13 (11th Cir. 2014), but the Court will briefly summarize them here. Though he did not formally join as a member, Ellis affiliated himself with a dog tag-wearing gang named "The Guardians," which tried to model itself after "Hell's Angels" and the fictional motorcycle gang portrayed in the television show "Sons of Anarchy." Over the course of 15 months between 2009 and 2010, the group terrorized people around Jacksonville, committing armed bank robberies, home invasion robberies, fencing stolen items, stockpiling firearms and body armor, selling drugs, and savagely beating one man, Dillon Burkhalter, to within an inch of his life. Ellis personally participated in some of these crimes, including the home invasion robbery of a couple by the name of Brig and Lita Hart. Ellis also helped organize several other home invasion robberies that were carried out by fellow gang members or associates. Meanwhile, Ellis served as the source of steroids for The Guardians, which another gang member sold to other people as well.

---

[3]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

A grand jury in the Middle District of Florida eventually charged Ellis (among others) with one count of violating the Racketeer Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. § 1962(c) (Count One) and one count of conspiracy to violate RICO under 18 U.S.C. § 1962(d) (Count Two). (Crim. Doc. 138, Second Superseding Indictment). The grand jury also charged Ellis with one count of threatening to commit a violent crime in aid of racketeering under 18 U.S.C. §§ 1959(a)(4) and 2 (Count Three), based on an incident where Ellis and a co-defendant, Andrew Wilkie, allegedly threatened to kill Wilkie's girlfriend, Chelsea Folkestad, unless she remained quiet about The Guardians. Id.

The Court initially appointed Paul Shorstein to represent Ellis. According to an affidavit Ellis submitted, Mr. Shorstein engaged in conversations with the United States about "whether the government might be interested in talking to Mr. Ellis for the purpose of offering information and testimony and Mr. Ellis getting credit for substantial assistance." (Civ. Doc. 3-1, Shorstein Affidavit at ¶ 5). Mr. Shorstein recalled that the prosecutor, Jay Taylor, "was interested in speaking with Mr. Ellis. Mr. Ellis might provide a proffer and/or make himself available to provide information about his codefendants and testify at their trial, if necessary." Id. at ¶ 6. None of that materialized in the end, however. Id. at ¶ 7. After Mr. Shorstein finished reviewing the discovery, he "was informed that [Ellis] had decided to hire another attorney," so Mr. Shorstein discontinued his efforts to arrange a cooperation agreement. Id.

Ellis opted to replace Mr. Shorstein with another attorney, Gerald Bettman. (See Crim. Doc. 93, Bettman's Notice of Appearance). Ellis proceeded to trial with Mr. Bettman, where he admitted to participating in the home invasion robbery of Brig and Lita Hart. (Crim. Doc. 280, Transcript of Ellis's Testimony ["Ellis Test. Tr."] at 29-31). However, Ellis

asserted that he was neither a member nor an associate of The Guardians, and thus was not guilty of the RICO charges. See, e.g., id. at 22-24 (denying being a member or an associate of The Guardians), 29-30 (denying knowing who The Guardians were or that the fellow perpetrators of the Hart robbery were members of the gang), 39-40 (denying that his activities were for The Guardians' benefit); (see also Crim. Doc. 282, Closing Argument Transcript ["Closing Arg. Tr."] at 47-48, 50, 71-72, 74-75). Ellis also contested other elements of the RICO charges, including whether an organization or enterprise existed, see Closing Arg. Tr. at 33-34, 71, whether any of his activities were connected by a common scheme or pattern, see id. at 32-33, 34, 36-47, 48-49, 73-74, and whether any of his activities were related to the affairs of the alleged gang, see id. at 34-35, 43, 45, 73.[4] With regard to threatening Chelsea Folkestad in aid of a racketeering enterprise, Ellis argued that according to Folkestad herself, the threat had nothing to do with The Guardians. Id. at 43, 78-80; (see also Crim. Doc. 319, Transcript of Chelsea Folkestad's Testimony ["Folkestad Test. Tr."] at 48-49).

Mr. Bettman's arguments were partly successful, as the jury acquitted Ellis of Count Three for threatening Folkestad in aid of a racketeering enterprise. (Crim. Doc. 255, Jury Verdict at 3). However, the jury convicted Ellis of the substantive RICO violation charged in Count One and the RICO conspiracy charged in Count Two. Id. at 1-2. As part of the guilty verdict on Count One, the jury found that Ellis committed three predicate acts as part of a pattern of racketeering activity: (1) the home invasion robbery of Brig and Lita Hart,

---

[4] The elements of a substantive RICO violation are that: (1) an enterprise exists; (2) the enterprise affects interstate commerce; (3) the defendant was employed by or associated with the enterprise; (4) the defendant participated, either directly or indirectly, in the enterprise's affairs, and (5) the defendant participated through a pattern of racketeering activity. United States v. Browne, 505 F.3d 1229, 1257 (11th Cir. 2007).

(2) money laundering (based on the sale of jewelry stolen from the Harts), and (3) conspiracy to commit armed robbery. Id. The Court sentenced Ellis to concurrent terms of 240 months in prison for each of the two convictions. (Crim. Doc. 414, Sentencing Transcript, Volume IV ["Sent. Tr. Vol. IV"] at 9); (Crim. Doc. 360, Ellis Judgment at 2). Ellis then filed a notice of appeal. (Crim. Doc. 357, Notice of Appeal).

On direct appeal, Ellis challenged the sufficiency of the evidence with respect to (1) whether he was associated with The Guardians, participated in its affairs, or conferred any income or other benefit on the gang through his criminal acts; (2) whether the predicate acts the jury found Ellis to have committed – the home invasion robbery, money laundering, and conspiracy to commit armed robbery – were related to The Guardians; (3) whether he in fact committed the predicate acts of money laundering and conspiracy to commit armed robbery; and (4) whether there was a single RICO conspiracy with a common scheme or goal, or instead multiple unrelated conspiracies. Godwin, 765 F.3d at 1319. The Eleventh Circuit rejected each argument and affirmed Ellis's conviction and sentence. Id. at 1319-24. Ellis did not seek certiorari review from the Supreme Court.

## II. The Motion to Vacate

Ellis argues that his trial counsel, Mr. Bettman, gave ineffective assistance by failing to communicate a plea offer. As the Court understands his Memorandum, Ellis alleges that his first lawyer, Paul Shorstein, had secured or nearly secured a cooperation plea agreement. However, when Mr. Bettman took over, he failed to communicate the plea offer to Ellis or to follow up on plea negotiations.

Ellis claims he suffered prejudice because he was willing to plead guilty and accept responsibility. He contends he would have received a lower sentence had he accepted the

uncommunicated plea offer instead of going to trial. As proof of that, Ellis points to the fact that three of his co-defendants, Billy Harper, Brock Skov, and Jonathan Hart, each accepted cooperation agreements and were sentenced to 100 months, 41 months, and 105 months in prison, respectively. Memorandum at 3; (see also Crim. Doc. 371, Harper Judgment; Crim. Doc. 362, Skov Judgment; Crim. Doc. 470, Hart Judgment). Notably though, as will become relevant, Harper's, Skov's, and Hart's plea agreements each required them to plead guilty to one count of a substantive RICO violation. (Crim. Doc. 105, Hart Plea Agreement at 1-2; Crim. Doc. 115, Harper Plea Agreement at 1-2; Crim. Doc. 120, Skov Plea Agreement at 1-2).[5] Ellis, by contrast, was insistent throughout the proceedings that his conduct did not equate to a RICO offense.

Importantly, Ellis never describes the terms of the plea offer that Mr. Bettman allegedly failed to communicate or to follow up on (namely, what offense he would have pled guilty to). While Ellis claims he was willing to plead guilty to something, he never identifies the crime to which he was willing to plead. See Memorandum at 2-5; (Civ. Doc. 3-2, Ellis Affidavit). Ellis seems to assume that the government would have allowed him to plead guilty only to what he thought he did wrong rather than what the government thought he did wrong. This is incorrect. As the Court will explain, the record reflects that Ellis had the same opportunity to plead guilty to a RICO violation as his co-defendants,但 Ellis rejected it because he did not think his wrongdoing amounted to a RICO offense.

---

[5] Skov also pled guilty to one count of possessing a firearm with an obliterated or altered serial number. Skov Plea Agreement at 2. Hart also pled guilty to one count of using and carrying a firearm in relation to a bank robbery. Hart Plea Agreement at 2.

### III.     Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner

must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

Strickland's two-part test applies to claims of ineffective assistance arising out of the plea negotiation process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). Thus, a prisoner alleging ineffective assistance of counsel based on his attorney's performance during the plea process must show two things: (1) that his attorney's advice fell below an objective standard of reasonableness, and (2) a reasonable probability that the outcome of the plea process would have been different with competent advice. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citation omitted).

**A. Counsel's Alleged Failure to Communicate a Plea Offer**

As noted above, Ellis claims that his trial attorney, Gerald Bettman, failed to communicate a plea agreement that Mr. Shorstein had negotiated. In Missouri v. Frye, the Supreme Court held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 132 S. Ct. 1399, 1408 (2012). "When defense counsel allow[s] the offer to expire

without advising the defendant or allowing him to consider it, defense counsel d[oes] not render the effective assistance the Constitution requires." Id. To demonstrate prejudice in such a case, a defendant must show a reasonable probability that but for counsel's failure to communicate the offer: (1) "the plea offer would have been presented to the court (i.e., the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting Lafler, 132 S. Ct. at 1385; citing Frye, 132 S. Ct. at 1409).

The record reveals several important things. First, the record reflects that Ellis's first attorney, Paul Shorstein, had conversations with the government about arranging a cooperation plea agreement. Shorstein Affidavit at ¶¶ 5-6. The prosecutor "was interested in speaking with Mr. Ellis" and Ellis was considering "provid[ing] a proffer and/or mak[ing] himself available to provide information about his codefendants and testify at their trial, if necessary." Id. at ¶ 6. However, "none of that materialized while [Mr. Shorstein] represented Mr. Ellis." Id. at ¶ 7. Ellis replaced Mr. Shorstein with Mr. Bettman before any deal could be reached. Mr. Shorstein's affidavit, which Ellis himself submitted, refutes the allegation that a plea agreement was on the table when Mr. Bettman took over the case. Mr. Bettman could not have failed to communicate a plea offer negotiated by Mr. Shorstein because no such offer existed.

Second, the record shows that at some point after Mr. Bettman took over, Ellis did receive an offer to plead guilty to a substantive RICO violation (and potentially to

9

threatening an act of violence in aid of racketeering, as alleged in Count Three of the Second Superseding Indictment). As Mr. Bettman stated at the sentencing hearing:

> We were given a choice to enter a plea admitting his association with the Guardians and that he … was involved in the extortion of Dillon Burkhalter and that the beating of Chelsea Folkestad was – he was actually involved in it and that he actually pulled her hair and dragged her and threatened her with death, which didn't prove to be accurate, on behalf of the Guardians. And that's just not accurate. We were forced to go to trial.

(Crim. Doc. 411, Sentencing Transcript, Volume III ["Sent. Tr. Vol. III"] at 141).

Third, the record reflects that Mr. Bettman did in fact communicate this offer to Ellis and Ellis rejected it. During the sentencing hearing, Mr. Bettman described how he and Ellis had "talked about entering a plea," but they "couldn't make that deal" with the government because Ellis "didn't feel comfortable" admitting that he committed acts of extortion that "had anything to do with the Guardians." Id. at 140. Additionally, in an email exchange between Mr. Bettman and Mr. Taylor (which Ellis attached to his reply brief), Mr. Bettman stated:

> Jay,
>
> <u>I relayed our conversation from yesterday to Eric. He directed me to advise you that he is not interested in making a plea to something he did not do.</u> Eric is interested in entertaining a reasonable offer. I do not believe, however, that any offense he may be involved in warrants federal jurisdiction…

(Civ. Doc. 16-1, Bettman-Taylor Emails at 1) (emphasis added). As the sentencing transcript and the email indicate, Ellis did not think he was guilty of violating RICO and he was "not interested in making a plea to something he did not do." Rather, Ellis was interested in entertaining only a plea offer that was reasonable according to <u>his</u> terms. Ellis confirmed as much in his own words during allocution. Sent. Tr. Vol. III at 178-79. Ellis expressed remorse for, and indicated he would have pled guilty to, the home invasion

10

robbery of Brig and Lita Hart, but he denied he was acting on behalf of The Guardians (i.e., as part of a RICO enterprise). In other words, he denied that his conduct amounted to a RICO violation:

> I look forward to being in a position to pay Mr. and Mrs. Hart back monetarily, but I can never restore to them the sanctity that I robbed them of that June night 2009. It is a deep-rooted shame that has plagued me every moment since. It was the reason why I confessed to this crime in my initial interviews and gave officers the location of the stolen firearms and access to my home to retrieve them. I wanted to accept the responsibility for my wrong in this heinous act and begin the process of getting it behind me, and had I been offered a plea in regards to this, I would have gladly signed it.
>
> <u>It was the government's stance that I was acting on behalf of a gang, and that just wasn't true</u>. I believe in this Court and I trust in Your Honor to clear up the confusion preventing me from moving forward. <u>It is the reason and sole motivation behind my choice in going to trial for a crime that I had already confessed to.</u>

Id. (emphasis added). Thus, Ellis stated himself that he was unwilling to admit that his criminal acts were part of a pattern or scheme related to The Guardians, i.e., that he violated RICO. For this reason, Ellis decided to forego a guilty plea and proceed to trial.

In light of the foregoing facts, the record amply refutes Ellis's claim that Mr. Bettman failed to communicate a plea offer. Mr. Shorstein's affidavit reveals that no plea offer existed when he handed the case off to Mr. Bettman. See Shorstein Affidavit at ¶ 7. The government then made an offer for Ellis to plead guilty to a RICO offense after Mr. Bettman assumed representation, but Ellis turned it down. Mr. Bettman's remarks at the sentencing hearing (which Ellis never disputed) reflect that he and Ellis discussed that offer, but Ellis did not want to admit that he acted in association with The Guardians. See Sent. Tr. at 140-41. The email exchange between Mr. Bettman and the prosecutor (which Ellis submitted as part of his Reply) further reflects that Mr. Bettman relayed the offer to Ellis and Ellis rejected it. Bettman-Taylor Email Exchange at 1. Thus, the record shows that Mr.

11

Bettman did not fail to inform Ellis of a plea offer. Compare Diaz v. United States, 930 F.2d 832, 834-35 (11th Cir. 1991) (allegation that counsel advised the defendant that a plea offer was "bullsh*t" indicated that the attorney had in fact communicated the offer to the defendant).[6]

The record further reflects that Ellis would not have been prejudiced had Mr. Bettman failed to advise him of the government's proposal. To establish prejudice, Ellis would have to show, among other things, a reasonable probability that he would have accepted the plea offer. Osley, 751 F.3d at 1222. He cannot do so. As reflected by the offers Ellis and his codefendants received, the government would have required Ellis to plead guilty to at least a substantive RICO offense, which would entail admitting that he acted in association with The Guardians.[7] Ellis was simply unwilling to admit to that. Ellis stated at the sentencing hearing that it was the government's position he was acting on behalf of the gang, that this allegation "just wasn't true," and this was "the reason and sole motivation behind [his] choice in going to trial." Sent. Tr. at 179. As such, there is not a

---

[6] Ellis also complains that "Mr. Bettman … never informed me prior to trial that other individuals [Harper, Skov, and Hart] … had received much lower sentencing plea agreements from the government for entering into guilty pleas and offering a proffer." Ellis Affidavit at ¶ 8. Ellis seems to think that his co-defendants' plea agreements guaranteed them a particular sentence, or that Mr. Bettman knew what sentences they would receive. Neither is true. None of the codefendants' plea agreements guaranteed a particular disposition. See Harper Plea Agreement at 15, 16-17; Skov Plea Agreement at 15-16, 17-18; Hart Plea Agreement at 16, 18-19. And to the extent the government promised to make any sentencing recommendations, such recommendations were not binding on the Court. So, none of Ellis's co-defendants knew what sentence they would receive when they pled guilty. Mr. Bettman also could not have advised Ellis of what sentences his co-defendants would receive because their sentences had not yet been determined at the time Ellis had to choose whether to plead guilty or go to trial.

[7] Not only did the government's offer to Ellis require him to admit to a RICO violation, see Sent. Tr. at 141, but each of the codefendants who pled guilty were also required to admit to a substantive RICO violation. See Harper Plea Agreement at 1-2; Skov Plea Agreement at 1-2; Hart Plea Agreement at 1-2; see also Crim. Doc. 202, Wilkie Plea Agreement at 1-2. Thus, the record reflects that the government was unwilling to allow any of the defendants to plead guilty to anything less than a RICO offense.

reasonable likelihood that Ellis would have agreed to plead guilty to a crime he insisted he did not commit. See Osley, 751 F.3d at 1224 (while not dispositive, the defendant's "insistence on his innocence, both before and after trial, makes it more difficult to accept his claim that he would have taken a … plea deal."); James v. United States, 623 F. App'x 973, 976 (11th Cir. 2015) (fact that defendant maintained his innocence throughout the case undermined his claim that he would have accepted a plea offer but for his attorney's deficient advice). Given the facts that Ellis rejected an offer to plead guilty to a RICO violation, that he adamantly insisted he did not commit a RICO offense, and that he was willing to go to trial specifically to contest the RICO charge, Ellis has failed to establish that counsel failed to communicate a plea offer or that such a failure would have been prejudicial.[8]

### B. Whether Counsel Was Ineffective for Failing to Continue Plea Negotiations

The United States notes that Ellis also seems to claim that Mr. Bettman was ineffective for not following-up on Mr. Shorstein's negotiations in regard to arranging a cooperation plea agreement. Response at 6. While the Court does not construe Ellis's Motion to Vacate as raising such a claim, in an abundance of caution the Court has considered it and determined that any such claim would lack merit as well.

In Frye, the Supreme Court explained that to show prejudice, a defendant must show "a reasonable probability that the end result of the criminal process would have been

---

[8] Ellis also mentions briefly that Mr. Bettman failed to advise him that by pleading guilty he could have received a two or three point Guidelines reduction for acceptance of responsibility. Ellis Affidavit at ¶ 7. However, this does not change the fact that Ellis was dead-set against admitting to a RICO offense, as the government's plea offer would have required. Indeed, Ellis does not even allege in his Motion to Vacate or Memorandum that he would have pled guilty to violating RICO if counsel had advised him of a potential three point reduction for acceptance of responsibility.

13

more favorable by reason of a plea to a lesser charge or a sentence of less prison time." 132 S. Ct. at 1409 (emphasis added). Whether Mr. Bettman could have negotiated a plea offer that was more favorable or more acceptable to Ellis than the one he turned down is entirely speculative. In fact, it is highly improbable. The government denies that it "would have agreed to a plea on terms acceptable to Ellis." Response at 8. In other words, Ellis was not willing to plead guilty to a RICO offense and the government was not willing to allow Ellis to plead guilty to anything less. As such, Ellis cannot establish a reasonable probability that Mr. Bettman could have negotiated a different or more favorable plea agreement. Relief on this claim is due to be denied as well.

### C. Ellis's Reply: Whether Counsel Misadvised Him About the Elements of a RICO Violation

In his Reply brief, Ellis claims for the first time that Mr. Bettman misadvised him about the elements of a RICO violation. Reply at 2-3. Specifically, Ellis suggests that Mr. Bettman believed he could be guilty of a RICO violation only if he was an official member of a racketeering enterprise, ignoring language in 18 U.S.C. § 1962(c) that holds associates liable as well. As a result, Ellis claims that Mr. Bettman's trial strategy focused on contesting whether Ellis was a "member" of The Guardians while failing to address whether he was an "associate." Id. at 3. Ellis claims he "was misguided by Bettman's false representation that 'association' with the Guardians was not enough to establish jurisdiction." Id. Ellis suggests that he would have pled guilty but for Mr. Bettman's "ignorance of the law." Id. at 4.

This claim is not properly before the Court because Ellis raised it for the first time in a reply brief without having sought leave to amend his § 2255 Motion to Vacate. Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018); Snyder v. United States, 263 F.

14

App'x 778, 779-80 (11th Cir. 2008). For that reason alone, the claim could be denied. Yet even if Ellis had sought leave to amend, leave would be futile because the claim is untimely and it does not relate back under Rule 15(c), Federal Rules of Civil Procedure, to the claims raised in the Motion to Vacate and Memorandum.

The new claim is untimely because Ellis's conviction and sentence became final on December 2, 2014, when the 90-day period for seeking certiorari review of the Eleventh Circuit's decision expired. See Jeffries v. United States, 748 F.3d 1310, 1313-14 (11th Cir. 2014). Under 28 U.S.C. § 2255(f)(1), Ellis had one year from that date, or until December 2, 2015, to file any collateral claims attacking his conviction and sentence.[9] Ellis filed the Reply brief on September 6, 2016, well outside the one-year statute of limitations. See Reply at 5.

The claim does not relate back to the Motion to Vacate either. To relate back, the new claim must have arisen "'out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000) (quoting Fed. R. Civ. P. 15(c)). That means the claim must be based on the same set of facts, not "events separate in 'both time and type' from the originally raised episodes." Mayle v. Felix, 545 U.S. 644, 657 (2005). It is not enough for the new claim to have generally arisen from the same trial, conviction, or sentence as the timely-filed claim. Id. at 656-64. Ellis's claim that counsel misadvised him about the elements of a RICO violation is based on a materially different set of facts than that in his Motion to Vacate and Memorandum. The claim raised there focused solely on counsel's failure to relay a plea offer from the government to Ellis when Mr. Bettman took over the

---

9   Ellis does not address 28 U.S.C. §§ 2255(f)(2)-(4) anywhere in his Reply brief.

15

case, or about Mr. Bettman failing to follow up on plea negotiations with the government. A careful reading of the Motion to Vacate and the Memorandum reveals that nowhere does Ellis claim that Mr. Bettman misadvised him about the elements of a RICO violation. The claim in the Reply brief is that counsel failed to advise Ellis, at any point before trial, that an associate of a racketeering enterprise could be convicted under RICO. The latter claim is based on "events separate in 'both time and type' from the originally raised episodes." Mayle, 545 U.S. at 657. As such, the claim in the Reply brief does not relate back and is not properly before the Court.

Alternatively, even if the claim did relate back it would lack merit. The record refutes Ellis's claim that Mr. Bettman did not know that an associate could be convicted under RICO. The trial record shows that Mr. Bettman understood that being an associate could result in RICO liability as well, and he adduced evidence to refute such a showing. At trial, for example, Mr. Bettman asked Ellis questions about whether he considered himself to be a member or an associate of The Guardians, and Ellis denied both. E.g., Ellis Test. Tr. at 22-23. During closing arguments, Mr. Bettman also stated: "You need to be a member or you need to be an associate, and I don't think we had one person say that Mr. Eric Ellis was a member or an associate in the Guardian enterprise." Closing Arg. Tr. at 47 (emphasis added).

Thus, contrary to Ellis's allegation, Mr. Bettman knew that an associate of a racketeering enterprise could be convicted under RICO, not just a formal member. Mr. Bettman developed testimony and argument to counter a showing of an association. Ellis himself denied, under oath, that he was associated with The Guardians. Ellis Test. Tr. at

22. The record therefore refutes Ellis's allegation that Mr. Bettman was ignorant that an associate could be convicted under RICO.

Moreover, even if Mr. Bettman had failed to advise Ellis that he could be convicted under RICO by being a mere associate, Ellis did not suffer prejudice. The record shows that Ellis must have known before trial that being an associate was enough to be convicted, and he was unwilling to admit to such a relationship with The Guardians anyway. When Mr. Bettman described the government's plea offer at the sentencing hearing, he stated that it would have required Ellis to "admit[ ] his <u>association</u> with the Guardians," but Ellis refused to do so. Sent. Tr. at 140-41 (emphasis added). Since the plea offer entailed admitting to an association with The Guardians, Ellis must have understood that being an "associate" was sufficient to be convicted under RICO. The record further indicates that Ellis was unwilling to admit to being associated with the gang. Indeed, Ellis went on to testify under oath that he did not consider himself to be an associate of The Guardians. As such, the record refutes any suggestion that he would have pled guilty to a RICO offense if only Mr. Bettman advised him that an association was enough to support a conviction.[10] Accordingly, even if the Court considered the new claim in the Reply, the claim would fail because Ellis cannot show prejudice.

---

[10] Additionally, Ellis disputed other elements of the RICO charge as well, not just whether he was a member or an associate. See Closing Arg. Tr. at 33-34, 71 (contesting whether an enterprise even existed); see id. at 32-33, 34, 36-47, 48-49, 73-74 (contesting whether his activities were connected by a common scheme or pattern), id. at 34-35, 43, 45, 73 (contesting whether any of his activities were related to the affairs of The Guardians); see also Godwin, 765 F.3d at 1319 (contesting whether the evidence was sufficient to prove that Ellis's activities were related by a common scheme or pattern). If Ellis had admitted every other element of a RICO violation, rejected a plea offer, and gone to trial only to contest whether he was a formal member of The Guardians, Ellis might have a stronger case that it was prejudicial for counsel not to advise him that an associate could be convicted as well. But that was not the case here. Ellis vigorously contested numerous elements of the RICO charge. Ellis believed there were other reasons why he was not guilty of the charge, so it is not reasonably likely he would have admitted to a RICO offense if only counsel advised him that an associate could be convicted too.

17

## IV. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Ellis seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Ellis "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1. Petitioner Eric Steven Ellis's Motion to Request Judgment (Civ. Doc. 17) is **GRANTED**. Ellis' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. Ellis's Request for Evidentiary Hearing (Civ. Doc. 3) is **DENIED** as well.

3. The Clerk shall enter judgment in favor of the United States and against Eric Steven Ellis, and close the file.

4. If Ellis appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 2nd day of July, 2018.

MARCIA MORALES HOWARD
United States District Judge

Lc19

Copies:

Counsel of Record

Pro se petitioner